NOAH BOYNTON *v.* FARMERS' MUTUAL FIRE INSURANCE COMPANY.

[IN CHANCERY.]

*Insurance Policy.    Assignment.    Chancery.*

When the charter of an insurance company provides that a sale of property insured shall render the policy thereon void, but provides further that the grantee having the policy assigned to him may have the same ratified and confirmed to him, &c., upon application to the directors and with their consent, within thirty days next after such alienation, by giving security, &c., and this was incorporated in the policy of insurance, which was to the assured, his heirs and assigns, it was *held* that the sale did not render the policy void, it having been assigned to the grantee at the time of the sale; and the assignee having complied with the terms of the policy in making the application to have the assignment ratified and no objection existing to the person of the assignee, the company was bound to ratify the assignment.

Therefore where under these circumstances the premises were destroyed by fire before the application for ratification of the assignment reached the company, and on receiving it the directors refused to ratify the assignment, it was *held* that the policy was still in force in favor of the assignee and he was entitled to a decree in his favor against the company for the same amount that his grantor would have recovered had there been no sale and conveyance of the property.

BILL IN CHANCERY.   The object of the bill and the facts in the case as set forth in the bill are sufficiently stated in the opinion of the court.   The defendants demurred to the bill, and at the May term, Lamoille county, 1866, WILSON, Chancellor, the bill was, *pro forma*, dismissed, and the orator appealed.

*R. C. Benton*, for the orator.

In this case the common law rule that in case of fire insurance, alienation of property avoids the insurance, unless the policy is assigned, is not denied.   The orator, however, claims that by the terms of this policy the company is under obligation to confirm the assignment, unless good reason is shown to the contrary.

When an insurance company issues a policy providing in terms that it may be assigned, that the assignee " may have the assignment ratified and confirmed," and the company takes the full premium and consideration for the full term, and the assignee complies with all the requirements of the company, and no objection exists to the person of the assignee, we insist that the com-

pany is in equity bound to ratify and confirm that assignment. This is not like an original application for insurance. There the company have received no consideration, and have made no promises, express or implied, and have received no benefit upon the strength of any inducements they have held out. Here the original contractor has acquired by the payment of his insurance premium a valuable right for the full term of his insurance; it makes the property more valuable to him while he keeps it, and if the promise of the company is carried out, namely, the promise to ratify the assignment, makes it more valuable to the assignee. To hold that the company has the arbitrary right to refuse to ratify such assignments, is in effect holding that they cannot properly do so, for in that case the confirmation of the policy to the vendee of the premises would be purely a donation to him of his premium for the residue of the policy. Now, the officers of a corporation have no right to give away the funds of the company.

In case of marine insurance, it is well settled law that the assignment of the policy passes the rights acquired by the insurance of the property to the purchaser, without notice or consent of the insurers. *Powles* v. *Innes*, 11 M. & W., 10; *Wakefield* v. *Martin*, 3 Mass., 558; *Earl* v. *Shaw*, 1 Johnson's Cases, 315.

A more stringent rule, doubtless, prevails in case of fire insurance, and the law, as well as the written policies of most companies, renders the consent of the insurers necessary to make the transfer of the policy effective at law. The reason is, that in case of fire insurance the risk depends more on the personal character of the insured, and in theory, at least, in case of mutual companies, it is desirable to regard the personal integrity of those admitted to membership. This provision is necessary and proper to enable the insurers to protect themselves against unsuitable persons; in short, for any good cause to refuse to ratify the transfer. This necessary provision, giving insurers the right to protect themselves against wrong and imposition, does not, as a consequence, extend to the right of rejection where there is no wrong, and no claim of any wrong, and make the right of rejection depend on mere caprice.

33

In the case at bar, the defendants admit that there was no good cause of refusal, and put their refusal upon their claim of an arbitrary right to do so. The occurrence of the loss was not a good reason for the refusal. That was the very thing the insurers had guaranteed against—the very risk they had assumed. It was only making absolute the very contingency they had taken upon themselves. If that were a good ground for refusing to ratify the transfer of a policy to the assignee, it would, on the same ground, be a reason for refusing to issue an entirely new policy. It is well settled that a parol contract of insurance, after payment of the premium, can be enforced in equity, even where by the charter of the insurance company the company is expressly prohibited from making insurance except by written policies. The proceeding there is precisely the same as here, namely, a bill for specific performance of the parol contract by issuing the policy, and when the loss had occurred, a decree at once for the amount. *Constant* v. *Insurance Co.*, 3 Wall, Jr. ; Reported in 1 Am. Law Reg., New Series, 116 ; *Com. Ins. Co* v. *Union Mut.*, 19 How., 318 ; *New Eng. Ins. Co.* v. *De Wolf*, 8 Pick., 62 ; *McCullough* v. *Eagle Ins. Co.*, 1 Pick., 280 ; See also, Wharton's Note, Am. Law Reg., 1, 123, and cases there cited ; also, *Tayloe* v. *Merchants' F. Ins. Co.*, 9 How., 390.

In these cases the fact of a loss having intervened is disregarded, and the rights of the parties are determined on precisely the same ground as if it had never occurred. 2 Am. Lead. Cases, Ed. 1857, pp. 613, 632 ; *Wilson* v. *Hill*, 3 Metcalf, 66 ; *Folsom* v. *Belknap Ins. Co.*, 10 Foster, 231.

If the company has an arbitrary right to refuse its ratification, and the old contract becomes entirely void, it cannot ratify an assignment and make a new contract in any case, for there is no consideration for such new contract.

From the cases already cited, it will be seen that relief in equity is properly sought. The case is on principles precisely like the United States Court cases already cited, when the insurers were bound to make insurance, and refused to do so, and a bill was brought for specific performance, by issuing the policy, and when

the loss had occurred, in order to prevent circuity of actions, a decree for the amount of the insurance. *Tayloe* v. *F. M. I. Co.*, 9 Howard, 390; *Constant* v. *M. Co.*, 1 Am. Law Reg., 116.

*Wells & Redfield*, for the defendants.

It is a well settled general rule in case of Fire Insurance (unlike Marine) that the alienation of the property insured avoids the policy of insurance. Angell on Ins., secs. 191–211; *Wood* v. *Rutland & Addison Mutual Fire Ins. Co.*, 31 Vt. R., 552; Kent's Com., 3d vol., page 375. See note B. Oliv. L. S., 253; 2 Atk. R., 554. But it is made so in this case by express words, in the contract and charter.

The provisions of the contract and charter show that the act of incorporation, as well as the insurance contract, contains an express provision that " when any building shall be alienated by sale, or otherwise, the policy shall thereupon be void." The By-Laws are quite as explicit: Section 8—" Provided said policy after sale shall be void until confirmed to the assignee;" but "if the assignment shall be approved by the Secretary, he shall record the same, on giving satisfactory security." "Policies against fire are *personal* contracts *with the assured*." Ang. on Ins., § 193. "They are contracts of *indemnity* against loss by fire; if the assured has wholly parted with his interest before they are burnt, the underwriter incurs no obligation to pay anybody." Ch. J. SHAW, in *Wilson* v. *Hill.*, 3d Met. R., 66. Ang. on Ins., § 194. The assignee can have no interest in the policy, unless the insurers *approve* of the assignment, and by such assent make a *new contract* with the assignee.

The orator may be an unsuitable person for the care of property. His securities defendant may not " approve," and in this it is defendant's right to judge. In the language of the charter, he " may have his policy confirmed, on application to the *Directors and with their consent*." 1 Ph. on Ins., 58–9; *Dadmun Manf. Co.* v. *Worcester Mut. Fire Ins. Co.*, 11 Met., 429; Ang. on Ins., *ut supra*; Ellis on Ins., 143–4–5–6; *Carpenter* v. *Washington Ins. Co.*, 2 Am. L. C., 602–3; Story J., do., 612–13.

It is claimed by the orator that, inasmuch as there must be an

assumed *sufficient consideration* for confirming the contract to the·
assignee, therefore a court of equity will enforce it *as a contract.*
This logic we deny.   There may be a sufficient *consideration* for
a contract with the assignee, but we never *made* any *contract.*
When the party insured sells the property, he has no *insurable
interest*, and his policy becomes void.   A fire insurance policy is
not assignable, and the policy assigned can only become operative
and valid by the *agreement* and *assent* of the company, and is void
unless and until such *agreement* and *assent* is had.   The orator
claims that the court will substitute *its* discretion for the discretion
and judgment of the party.   Not a single adjudged case or dic-
tum has been found to warrant such a claim.   An assignment even
for the benefit of creditors avoids the policy.    1st Phillips on
Ins., § 879–80 ; *Smith* v. *Saratoga Ins. Co.*, 3 Hill, 508 ; 1 do.,
497 ; *Western Ins. Co.* v. *Riker*, 10 Mich., 279 ; *Ayers* v.
*Hart. Ins. Co.*, 17 Iowa, 176 ; *Tomlinson* v. *Monmouth Ins. Co.*,
47 Maine, 232 ; *Lawrence* v. *Holyoke Ins. Co.*, 11 Allen, 387.
Ch. J. SHAW in *Wilson* v. *Hill*, 3d Met., 66.

It is asserted by orator's counsel that the premium for the *whole*
term was received by the company.   The insured paid a certain
sum, and gave his note on which assessments were to be made ;
and it cannot be assumed when or how many assessments would
be made during the time.   The orator claims that this case is an-
alagous to a company's receiving the *premium*, and agreeing to is-
sue a policy.   In that case the *contract* is made with the *party* to
be insured, and the consideration *paid by him.*   In this case no
*contract is made*, and the defendant refuses to make one.   If the
assignee has the right to enforce the contract, and the policy is
good in his hands, then the orator's *right at law* is good.

The opinion of the court was delivered by

WILSON, J.   The object of the orator's bill of complaint is, to
recover certain sums of money for loss and damage of property
insured by the defendant company.   On the 12th of August, 1863,
one Charles Jewett effected an insurance in the defendant com-
pany upon buildings located upon his farm in Hydepark.   It was
and is the custom of said company to demand and receive, at the

time of making their insurance contract, a sum sufficient to cover the whole claims of the company the whole term of the policy, without making other assessments on the premium note.   Jewett did pay to said company, at that time, the required sum in cash as *premium*, and the sum so paid was the whole amount it was expected would be required to be paid to defendant on said policy for the term of five years which it was to remain in force.   The property was insured to said Jewett, his heirs and assigns.   The policy contains, among other things, the following clause : " And we do therefore promise, according to the provisions of the act of incorporation and the by-laws of said company, which are to form a part of this contract, to settle and pay unto the said assured and heirs, executors, administrators or assigns, all loss or damage not exceeding in the whole the sums aforesaid, which shall or may happen to the aforesaid property by reason or by means of fire during the time this policy shall remain in force."   On the 11th of November, 1865, the said Jewett's administrator sold said farm and buildings to the orator and conveyed the same to him, by deed of that date, duly executed, delivered and recorded, and on the same day assigned said policy of insurance to the orator. On the 19th of said November said buildings were destroyed by fire, and on the 20th of the same month the defendant was duly notified of said transfer and assignment to the orator, and requested to ratify and confirm the same to him, but refused.

It is insisted by the defendant's counsel that the sale and conveyance of the property rendered the policy absolutely void ; that the company not only did not ratify, but had the arbitrary right to refuse to ratify the policy to the orator.   It has been observed that the act of incorporation and by-laws of the company are a part of the contract.   Section four of the charter declares that when any building shall be alienated by sale or otherwise, the policy shall thereupon be void : " *Provided*, however, that the grantee or alienee having the policy assigned, may have the same ratified and confirmed to him, her or them, for his, her or their use and benefit, upon application to the directors and with their consent, within thirty days next after such alienation, on giving proper security to the satisfaction of said directors, for such pro-

portion of the deposit or payment notes as shall remain unpaid, and by such certification and confirmation the party causing the same shall be entitled to all the rights and privileges, and subject to all the liabilities, to which the original party was entitled and subject under this act." The eighth section of the by-laws provides that, whenever the grantee or alienee of any property insured shall procure an assignment and transfer of a policy, and shall, within thirty days from the day he purchases the same, forward the said policy and assignment to the secretary, he may have the same confirmed and ratified to him, and when so ratified and confirmed, the secretary shall record the same when the grantee or alienee shall have given satisfactory security for the payment of the premium note given for the policy. It also contains the following clause : " *Provided* said policy, after sale, shall be void until confirmed to the assignee." The facts stated in the bill of complaint and admitted by the answer or demurrer, show that Jewett's administrator and his assignee performed, within the time provided in the contract, all it required them to perform to entitle the assignee to have the policy ratified and confirmed to him. The conveyance of the property and assignment of the policy to the orator were made before the loss. The policy and assignment were forwarded to the secretary of the company within the time limited for that purpose, and security given or offered, agreeably to the terms of the contract.

It is claimed by the defendant that the assignee can have no interest in the insurance unless the insurers approve the assignment, and by such assent make a new contract with the assignee. This position incorrectly assumes that such a policy is a personal contract merely with the original party, and that it is rendered void by the conveyance until confirmed by a new contract with the assignee, notwithstanding the assignment of the policy to him. The defendant's interpretation of the contract is, that the purchaser of insured property may have the insurance assigned to him ; that he shall have a certain time within which to comply with the conditions on which the company, by the terms of the original contract, agreed to confirm the assignment, but in the mean time such assigned policy is void, and if the property is de-

stroyed or damaged by fire before confirmation of the assignment, the company is not liable for such loss or damage. But this is not the legal effect of the defendant's promise. The contract was entered into by and between the company as one of the contracting parties, and Charles Jewett, his heirs and assigns, who constitute the other party thereto. It was a contract to insure not only Charles Jewett, but his heirs and assigns, upon the terms and conditions named in the policy. The terms of the contract and the payment in advance of the insurance premium, show it to have been the intention of the parties to secure to the original party assured, his heirs and assigns, a valuable right for the full term of said insurance agreeably to the stipulations contained in said policy. The insurance made the property more valuable to Jewett while he owned it and more valuable to his estate and assignee. The estate of Jewett was justly entitled to receive of the grantee of the property its value enhanced by the insurance ; and the parties to the conveyance and assignment, in negotiating the same, had the right to assume that the company would ratify and confirm the policy to the grantee, upon the conditions specified therein, provided he was a suitable person to be admitted a member of the company, and no good cause existed why the insurance should not remain in force. In such a case the making of a new contract between the company and assignee was not necessary in order to entitle him to the benefit of the insurance. All the assignee could be required to do, under such circumstances, in order to entitle him to have the assignment ratified, was to comply with the terms of the contract between the company and the original party assured, and having done this, the company was bound to ratify the assignment, unless there was such a change in the situation of the property as would, by the terms of the contract, give the company a right to cancel the policy or increase the rate, and then the assignee could justly claim all rights which the original party could have claimed if he had continued the owner of the property, provided there was no valid objection to the assignee personally. The liability of the company to the original party assured and his estate, for any loss that might happen to the property, ceased when the administrator conveyed it, and the sale

would have annulled the policy if he had not assigned it to the orator. Jewett's estate had an assignable interest in the insurance, which the administrator transferred to the orator. His rights under the policy commenced at the time of the assignment. He had thirty days next after he purchased the property to perform the conditions on which the company stipulated in the policy to ratify it to Jewett's assignee, and during which time the insurance remained in force for his benefit. If the company had at any time confirmed the assignment to the orator, such confirmation would relate back to the time the policy was assigned to him. The orator performed the contract as indicated by the policy; hence it remains in force notwithstanding the company refused to ratify the assignment, unless the directors had just cause of refusal. It is undoubtedly true that insurers could, under such a contract, protect themselves against an assignment of the insurance to an unsuitable person for the care of the property, or other cause might exist which would justify the insurers in refusing to ratify an assignment of the policy. The 4th section of the charter provides that the grantee or alienee, having the policy assigned, may have the same ratified and confirmed to him, *on application to the directors with their consent.* This should receive a reasonable interpretation. The construction should be upon the view and comparison of the whole contract, and with an endeavor to give every part of it meaning and effect according to the intention of the parties. The presumption would be that the assignee was a suitable person, unless there was evidence to the contrary. In order to justify the directors in refusing to give their consent to an assignment of a policy, they must have evidence of the unsuitableness of the assignee, or of some other cause of refusal. To allow them the arbitrary right to reject the assignment, would render the insurance less valuable, and it might operate as a fraud upon the assured and his assignee. In this case the company admit that there was no cause for the refusal to ratify said assignment. The directors of the company claimed the right to act and did act arbitrarily in the matter, but in this they erred as to the legal obligation of the contract. We are of opinion that the orator is entitled to relief, according to the prayer of his bill. The

*pro forma* decree of the chancellor is reversed and the cause remanded to the court of chancery, with instructions that a decree be entered in favor of the orator, to recover of the defendant the loss on the dwelling-house and shed mentioned in the orator's bill of complaint, the same as if the defendant had assented to and confirmed to the orator the assignment of said policy, and that the orator recover his costs.